FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

98 JUL 16 PM 3: 36

U.S. DISTRICT COURT
N.D. OF ALABAMA

CRAIG COVINGTON,                )
                                )
            Plaintiff,          )
                                )
vs.                             )   CV 97-PT-3244-M
                                )
CITY OF GADSDEN, et al.,        )
                                )
            Defendants.         )   ENTERED
                                )
                                )   JUL 16 1998

Memorandum Opinion

This cause comes on to be heard on motions for summary judgment filed by defendants Roger Dale ("Dale"), D. S. Hoskins ("Hoskins"), and the City of Gadsden, Alabama ("Gadsden"), on May 8, 1998, and filed by the defendant James Hayes, the Sheriff of Etowah County, on May 11, 1998. Plaintiff has agreed that the claims against James Hayes are due to be DISMISSED. In their motion, defendants Dale, Hoskins and Gadsden contend that they are entitled to immunity under state and federal law from the claims of the plaintiff, Craig Covington ("Covington"), that he was falsely imprisoned, subjected to malicious prosecution, and libeled, in violation of State law, and "deprived of his right to life and liberty with[out] due process of law" in violation of the Fourteenth Amendment. The defendants also argue that, in any case, the plaintiff is unable to state a claim. The plaintiff contends otherwise, except with respect to his libel claim, which he relinquishes.[1]

On a motion for summary judgment, the court must assess the proof to ascertain whether there is a genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is appropriate only if this court concludes that no genuine issue of material fact exists

---

[1] The defendants' motion for summary judgment on the libel claims of plaintiff will be GRANTED.

and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party seeking summary judgment bears the initial responsibility of informing this court of the grounds for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met this burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 523 (11th Cir. 1994). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file designate specific facts showing there exist genuine issues for trial. Celotex, 477 U.S. at 324; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). The court may consider the offered "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any..." in deciding whether to grant or deny a summary judgment motion. FED. R. CIV. P. 56(c). In resolving whether a given factual dispute requires submission to a jury, the court must view the presented evidence through the looking glass of the substantive evidentiary burden. Anderson, 477 U.S. at 254-55. The court, however, must avoid weighing conflicting evidence for probity or making credibility determinations. Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992). "It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather decide whether such issues exist to be tried. The Court must avoid weighing conflicting evidence or making credibility determinations." Hairston v. Gainesville Sun Publishing Co., 9 F.3d 913, 919 (11th Cir. 1993). However, incomplete or anecdotal evidence will not aid the non-movant in demonstrating a genuine issue of material fact. "The nonmoving party must provide more than a mere scintilla of evidence to survive a motion for judgment as a matter of law; 'there must be a substantial conflict in evidence to support a jury question.'" Tidwell v. Carter Products, --- F.3d ---, 1998 WL 80143 at *3 (citing Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir.1989)).

In light of the above, this court must canvass the evidence to determine if there is a genuine issue of material fact.

FACTS[2]

On October 28, 1996, the plaintiff asked for a lift to the Penny Profit Barbecue from the driver of a white Nissan truck, James Huff. Huff allegedly offered to drive Covington to the restauraunt, but on the way, Huff stated that he and another occupant needed to stop at the Rainbow Food Mart. When they reached the food mart, the plaintiff asked Huff if he would mind buying the plaintiff some beer to slake his thirst. Covington decided to wait in the truck while Huff went inside.

Huff entered the food mart. Instead of perusing the beer aisle, however, Huff walked to the telephone and contacted the Gadsden City Police. According to the defendants, they were informed by a dispatcher that a black man had jumped into the caller's truck, offering to sell the driver some drugs. Officers Kevin Jung ("Jung"), Jeff Knowles ("Knowles") and Ronald Leek ("Leek") responded to the dispatcher's call.[3] Three patrol cars pulled into the parking lot of the Rainbow Food Mart. Upon the officers' arrival, an individual pointed out to Jung the white truck in which Covington was sitting. As Jung approached, Covington spied him and, according to Jung, began to act nervous and fidgety. The plaintiff states that Jung drew his gun and requested that the plaintiff place his hands on the dashboard of the car. Covington did not immediately comply, allegedly because he was putting change in his pocket.

The officers requested that Covington exit the truck. The plaintiff states that he complied voluntarily; the defendants assert that the officers were required to remove him. In any case, after Covington was pulled from the truck, the officers patted him down and felt a rock-like substance in plaintiff's pants. An officer asked the plaintiff what the substance was, to which he replied that it was probably plaster or rocks that he had collected while doing plastering work earlier that day. According to the defendants, plaintiff then told the officers to "check and see." Officer Jung reached into Covington's pocket and removed a hard, off-white, waxy substance, which the officers took to be crack cocaine. Covington was placed under arrest and taken to the Etowah County Detention Center while an investigation ensued.

The "rock" was placed in a plastic bag by the officers. The evidence was then transported by Hoskins, the property and evidence officer of the Gadsden Police Department on the day of the arrest, to the State Toxicology Lab at Jacksonville State University. Eleven days later, on November 8, 1996, Ronald

---

[2] The facts are stated most favorably to the plaintiff. They may or may not be the true facts.

[3] While Officers Jung, Knowles and Leek are all defendants in the instant suit, they have only recently been joined as parties and have not yet filed motions for summary judgment in the case.

D. Hubbard, a forensic scientist associated with the Alabama Department of Forensic Sciences analyzed the "rock" and determined that it did not contain any illegal or controlled substances. On November 12, 1996, Hubbard filled out a Certificate of Analysis indicating his findings, which was notarized the same day. Both parties equivocate on when they think that the Certificate of Analysis arrived at the Gadsden Police Department. According to plaintiff, it could be no later than November 16, 1996, if, as was standard practice, the report was sent by first-class mail. In addition, Hoskins drove to the Department of Forensic Sciences lab to retrieve the evidence on November 13, 1996. The defendants state that it was received at the latest on December 2, 1996, when it was forwarded to the narcotics division secretary. Because the facts are friendly to the plaintiff at summary judgment, the court will assume that the Gadsden Police Department, and in particular, Hoskins, received the Certificate by November 13, 1996.

In the meanwhile, based on the statements of Huff, the statements of the officers responding to Huff's call, and the two apparent "rocks" of crack cocaine found on the plaintiff,[4] narcotics officer Roger Dale ("Dale") obtained from an Etowah County Magistrate a felony warrant against Covington on October 30, 1996, charging him with felony possession of a controlled substance, crack cocaine. At his probable cause hearing and initial appearance before a magistrate on the same day, the magistrate found the existence of probable cause and set bond at $2500.00 dollars, too high a sum for the indigent Covington to pay. Covington began to languish in jail. All officers involved claim ignorance of whether Covington was in jail or out on bond.

Hoskins, upon receiving the analysis report, ignored it, stating that he never reads toxicology reports. As soon as they are received, stated Hoskins, they are forwarded to the narcotics officer and arresting officer(s) on the case. Defendant Dale allegedly received the report by December 2, 1996. Dale said that he just stuck it in his file without looking at it.

In late November, plaintiff's appointed criminal defense attorney, Dani V. Bone, began to question the Assistant District Attorney, Jimmy Harp, about the location of the forensics report on the substance seized from Covington for which had made a discovery request. In a hallway discussion on November 22, 1996, Harp confided that he had no idea of the whereabouts of the report. Eleven days later, on December 3, Bone inquired again. Harp said that he did not know of the report's location, but when he did find it, he would tell Bone. Two days later, Bone was in Harp's office and asked him about the outcome of the forensics tests. Harp called the forensics lab and learned that twenty-three days earlier, the forensics lab had

---

[4] A second "rock" was found on Covington while he was being admitted to the Detention Center.

sent a Certificate of Analysis to the Gadsden Police Department indicating that no controlled substances were present in the material sent to them.

Harp saw the possibility of litigation on the horizon. He pulled out a release form absolving the Gadsden Police Department and any officers or official involved in the arrest and detention of all liability and asked Bone to get the plaintiff to sign it. Bone replied that he did not believe that Covington would agree to sign the release. Harp stated that he would not release Covington until the release from liability was signed.[5]

On December 6, 1996, at 8:00 a.m., Bone went to see District Judge Wayne Owens, who issued an order releasing Covington on his own recognizance. Some time later, the grand jury "no billed" the charges against the plaintiff and the charge against the plaintiff was dismissed.

## CONTENTIONS & ANALYSIS

I. STATE LAW CLAIMS.

The plaintiff raises two state law claims, false imprisonment and malicious prosecution, against defendants Dale, Hoskins and Gadsden. Dale and Hoskins (collectively, the "officer defendants") argue that they are protected by discretionary function immunity from the instant suit. Gadsden contends that it is entitled to municipal immunity from the suit. All defendants argue that the plaintiff cannot state a claim of false imprisonment and malicious prosecution, in any case. The plaintiff, of course, contends that he has managed to state cognizable claims of false imprisonment and malicious prosecution. Also, states plaintiff, neither the officer defendants nor Gadsden can invoke immunity from the instant action.

Prior to addressing the defendants' immunity claims, the court will first determine whether the plaintiff actually states a claim under presently existing Alabama law. The court will then examine the defendants' assertions of discretionary function immunity and Gadsden's claims of municipal immunity.

**A. False imprisonment.**

The plaintiff claims that he was falsely imprisoned under Alabama law when Hoskins and Dale failed to request that the prison release the plaintiff when they received the Certificate of Analysis from the forensic lab stating that the material found on the plaintiff was not crack cocaine or any other controlled

---

[5] There is also some indication that in late November, two weeks before his release from jail, Covington was brought a release by his attorney to sign, but that he refused to sign it.

substance. The defendants state that the only arguable false imprisonment claim of the plaintiff arose when plaintiff was arrested and, therefore, no claim of false imprisonment can be stated.

Under Alabama law, "[f]alse imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. "If there is a detention of the person by another, and that detention is unlawful, this will constitute false imprisonment." Sokal Bros. Furniture Co. v. Gate, 93 So. 724, 726, 208 Ala. 107 (Ala. 1922). Typically, where the false imprisonment claim involves the jailing of the plaintiff, the proof of false imprisonment will be co-extensive with proof of a false arrest claim. See Drill Parts and Service Co. v. Joy Mfg., 619 So.2d 1280, 1284-85 (Ala. 1993) (analyzing the existence of plaintiff's false imprisonment claim by examining whether plaintiff's arrest was lawful under arrest statutes), and Sokal Bros. Furniture Co. v. Gate, 93 So. at 726-727 (treating plaintiff's entire claim to be one growing out of a false arrest that was not alleged in the complaint) & 727 (J. Gardner, dissenting, noting that while false imprisonment may be conditioned on an arrest, this is not always the case under Alabama law).

At the same time, not all false imprisonment claims involving the jailing of an individual are predicated on a false arrest of the individual. In Hayes v. Mitchell, 69 Ala. 452 (Ala. 1881), the plaintiff was arrested without warrant by the marshal of Oxford on the grounds that the plaintiff was about to commit a breach of the peace. The marshal then took the plaintiff into the local "caboose" for two hours, until the mayor ordered the plaintiff released. The plaintiff sued the marshal, which resulted in a judgment in the plaintiff's favor. On appeal, the Supreme Court of Alabama first noted that neither party contested the validity of the arrest. Id. at 454. The Court remanded the case, not because a false imprisonment claim could not exist without an unlawful arrest, but because the jury failed to consider the circumstances possibly justifying the marshal's extended detention of the plaintiff. Id. at 455. The Court stated:

> Two great and vital principles of Government are to be kept steadily in view, in pronouncing on conduct, such as is brought to view in this record; the liberty of a citizen, and the peace and repose of society. Civil liberty is natural liberty, shorn of excesses which invade and trench on the equal liberty of others. No one can claim the right to violate the law, and precautionary force is justified, to prevent a greater impending evil. Such force, however, is in its nature remedial, and can be carried no further than is reasonably necessary to prevent the threatened wrong. Prevention is less hurtful than redress, and when prudently exercised, is not only justified, but is commended of the law. . . .
> The rule we declare in this case, must be applicable more or less to all municipalities; particularly to corporations having powers of local government. Possibly in cities and large towns, there is need of greater license in the matter of making arrests, and of detention, without warrant; but it culminates at last in the inquiry, what is reasonably demanded, to guard and protect the public peace. The time of day or night, the surrounding circumstances, the peaceful or riotus conduct of the public, the necessity, real or apparent, that the arresting officer shall be alert to

> prevent other acts of violence or lawless disturbance, the accessability of the mayor or other magistrate, all these enter into the inquiry, what is the duty of the arresting officer. . . . Let it be borne in mind, we are dealing with a case where the arrest is rendered lawful by the misconduct of the person arrested, and not with a case of causeless or wanton arrest. If the arrest in this case was without cause, of course no circumstances could justify the imprisonment.
>      . . . The right to imprison was a question for the jury, under appropriate instructions. <u>There should certainly be no imprisonment, unless the circumstances rendered such imprisonment necessary</u>.

<u>Id</u>. at 454-55.

In <u>Simpson v. Boyd</u>, 101 So. 664, 665, 212 Ala. 14 (Ala. 1924), the jury was charged that "[b]efore you can find against the defendants for false imprisonment, you must be reasonably satisfied that at the time [the defendant] ordered the arrest of plaintiff, that he had no reasonable cause to believe that the plaintiff had committed a felony." The Supreme Court of Alabama held the charge in error, stating:

> [C]harge 6 was bad in instructing for the defendant if the original arrest was made in good faith, and unless Simpson had no reasonable cause to believe that the plaintiff was the man wanted in Chambers county. All of this may have been true when the arrest was made, but there was evidence from which the jury could infer that [the defendant] discovered the fact that the plaintiff was not the right man upon reaching Birmingham and subsequently took him to Chambers county and placed him in jail, and which could amount to false imprisonment notwithstanding the original arrest may have been made under the circumstances hypothesized in the charge.

<u>Id</u>. The court also notes the case of <u>Upshaw v. McArdle</u>, 650 So.2d 875, 879 (Ala. 1994), in which the plaintiff raised a claim of false imprisonment against defendant McArdle on the grounds that after discovering that there existed insufficient evidence to keep her in custody that he returned her to custody for failing to sign a release from imprisonment. The Court, while it held that the plaintiff had failed to put forward any evidence supporting her claim that McArdle had her returned to custody after discovering her improper detention and, therefore, that her false imprisonment claim failed, did not debunk the theory of the claim—i.e., that a continued detention of a person after discovery that no basis for detention exists is unlawful.

The case to which the defendants cite in support of their argument that the plaintiff's false imprisonment claim is foreclosed by the lawfulness of the arrest does not deal with the continued detainment of a plaintiff after evidence negating the charge is presented to the imprisoning officers. In <u>Karrick v. Johnson</u>, 659 So.2d 77, 79 (Ala. 1995), the plaintiffs were arrested when they attempted to refill a prescription that an officer had a reasonable basis to believe was doctored. The plaintiffs challenged their subsequent imprisonment as unlawful. There was no claim made based upon their detention subsequent to discovery that no charge could be stated against them. The Alabama Supreme Court noted that because the

plaintiffs were arrested under a valid warrant issued by a warrant magistrate, "neither the arrest not the subsequent imprisonment is considered 'false.'" Id.

Nonetheless, there is no clear law establishing the existence of a claim for false imprisonment where, after the filing of a criminal complaint, the plaintiff is left in jail beyond the time when evidence which wholly negates the existence of any crime comes into the hands of police. Once a complaint is filed against the plaintiff and he is held for trial, the police no longer have the authority to effect the plaintiff's release. See, for example, Yarber v. State, 368 So.2d 868 (Ala.Cr.App.) ("[L]aw enforcement officers are without question totally lacking in power to authorize or grant immunity from arrest or prosecution to one criminally culpable under the laws of this state."), cert. denied, 368 So.2d 871 (Ala.1978). The police, even if faced with incontrovertible evidence of plaintiff's innocence, could not themselves release the plaintiff from the jail. The responsibility for the plaintiff's case passes to the prosecuting attorney, who can move to have the complaint dismissed if he determines that no basis exists for the crime. A criminal defendant has appropriate avenues available to him as well, including the request of a preliminary hearing to examine the existence of probable cause and the filing of a petition for habeas corpus to determine the validity of the detention.

The officer defendants could not, therefore, be held liable for not securing the release of the plaintiff themselves because they were incapable of doing so. The law of Alabama, however, does not hold liable only those who actually imprison a plaintiff (or refuse to release a plaintiff after lawful basis for detention has expired), but those "persons other than those who actually effect an arrest or imprisonment . . . so involved with or related to the act or proceeding as instigators or participants therein as to be liable for false imprisonment." Crown Central Petroleum Corp. v. Williams, 679 So.2d 651, 654 (Ala. 1996). If the district attorney could have secured the release of the plaintiff by moving the district court to dismiss the complaint against Covington, a knowing failure of the officers to provide the district attorney with a copy of the Certificate of Analysis where they had a duty to do so could create liability.

Eleventh Circuit law does not impose upon criminal investigators the duty to disclose exculpatory evidence to the prosecutor where there is a reason for the investigators to believe that the prosecutor might already have the information. See McMillian v. Johnson, 88 F.3d 1554, 1567 (11th Cir. 1996), reh'g and reh'g en banc denied and modified, 101 F.3d 1363 (11th Cir. 1996), cert. denied sub nom, MacMillian v. Tate, — U.S. —, 117 S. Ct. 2514 (1997). The duty of police officers under Alabama law, however, is arguably greater than that imposed under federal law. Under Alabama law, the prosecutor is imputed with knowledge of any exculpatory material in the possession of the police. Sexton v. State, 529 So.2d 1041,

8

1045 (Ala. Ct. Crim. App. 1988). This attribution would leave the State open to regular challenges by defendants that exculpatory material was not provided them if there were not some degree of communication between the police and the district attorney's office about any exculpatory evidence. Further, officers and other public officials involved in an investigation have some duty to turn over exculpatory evidence to the prosecution, regardless of a request, in order that it may be provided to a defendant in a criminal action within a reasonable time after the request. The defendants contend, however, that it is standard practice not only for the evidence and Certificate of Analysis to be turned over to the police, but for a copy of the Certificate of Analysis to be forwarded to the district attorney. If so, the police might have reason to think that they had no direct obligation to forward the evidence.[6] The plaintiff apparently contends that the officers in the instant case were charged with the duty of maintaining the evidence for the prosecutor and, impliedly, for independently calling to the prosecutor's attention any exculpatory evidence in the defendant's file. In addition, the Certificate of Analysis does not indicate that a copy was actually forwarded to the Office of District Attorney of Etowah County. Whether a sufficient reason existed for the officer defendants to believe that it was unnecessary to turn over the exculpatory evidence to the prosecutor is a contested issue of fact.

In any case, the officer defendants did not violate any clearly established law of Alabama. The officer defendants are entitled to discretionary function immunity, therefore, if their actions were taken while they were engaged in "discretionary function[s] within the line and scope of [their] enforcement duties.". See Ala. Code § 6-5-338. The initial burden is on the defendant to demonstrate that their acts were discretionary. In Sheth v. Webster, 137 F.3d (11th Cir. 1998), revised, — F.3d — (11th Cir. 1998), the Eleventh Circuit Court of Appeals stated:

> If [the defendants'] acts were discretionary acts, the burden shifts to the plaintiff to demonstrate that the defendants acted in bad faith, with malice or willfulness in order to deny them immunity. "Acts of such nature are not considered by Alabama law to be discretionary. " Wright v. Wynn, 682 So.2d 1, 2 (Ala. 1996). Discretionary acts have been defined as "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." Id. at 2. See also L.S.B. v. Howard, 659 So.2d 43, 44 (Ala. 1995).

The plaintiff does not contest the fact that the acts were discretionary in the sense that they were taken while the officer defendants were acting as police officers pursuing a criminal investigation. Instead, the plaintiff

---

[6] While the redundancy of having the police always forward copies of exculpatory materials to the district attorney's office may be cumbersome additional paperwork for the police office, it would be a small burden compared to the cost imposed on improperly imprisoned criminal defendants languishing in jail and the city, which must pay to house the detainee.

9

apparently contends that the officer defendants acted willfully, maliciously, fraudulently, or in bad faith in "sitting on" the Certificate of Analysis and are, therefore, not entitled to immunity.

"[A]n employee is not protected by discretionary function immunity if his actions were committed fraudulently, willfully, maliciously, or in bad faith." Tuscaloosa County v. Henderson, 699 So.2d 1274, 1278 (Ala. 1997). In Henderson, a license inspector had the plaintiff arrested for operating a business without a license on the grounds that the plaintiff had not renewed his business license. The inspector had, however, failed to determine whether the plaintiff was operating a business at the time. The Alabama Supreme Court held that a jury had not inappropriately found that the license inspector "acted wantonly in arresting Tinsley [the plaintiff] without first conducting an investigation." The failure to actively determine the existence of probable cause was, the court found, adequate reason to deny discretionary function immunity.

In Henderson, the defendant simply failed to conduct an adequate investigation into probable cause. In the instant case, by contrast, the officer defendants arguably had in their hands and before their eyes evidence which clearly negated the existence of any crime, but of which they failed to make the district attorney aware. Although the officer defendants' behavior in holding the exculpatory evidence without attempting to determine whether Covington had been released might seem more egregious than that of the license inspector in Henderson, the court notes that the officers here arguably had reason, albeit maybe flimsy and insubstantial, to think that the Certificate of Analysis was already in the district attorney's hands. Perhaps the assistant district attorney, who had received a request for exculpatory evidence, should have contacted the police department to determine the results of the analysis, rather than doing nothing for three weeks. If the officers had reason to believe that the district attorney had received the report, they may have been negligent or lazy, but not willful, malicious, etc. The court concludes that the practice with regard to such evidence and the reasonableness of the assumption that it had been sent to the district attorney is a factual issue which cannot be resolved by this court on this motion.

In its brief, the City's sole argument against municipal liability for the failure to release Covington is that the Supreme Court of Alabama has held that the City of Gadsden cannot be held liable for a false imprisonment tort, citing Brooks v. City of Birmingham, 584 So.2d 451 (Ala. 1991). The holding on which the City relies was clearly overruled in Franklin v. City of Huntsville, 670 So.2d 848 (Ala. 1995):

> This court affirms the holding of Neighbors v. City of Birmingham, 384 So.2d 113 (Ala. 1980)—that a municipality is immune from a malicious prosecution claim—but rejects the extension of Neighbors to provide immunity to claims of false arrest and imprisonment brought

under Ala. Code 1975, § 11-47-190. Any language to the contrary contained in . . . Brooks v. City of Birmingham, 584 So.2d 451 (Ala. 1991), is overruled.

Id. at 852.

The plaintiff's first claim, that the district attorney kept him in jail after it was determined that he should be let go because the plaintiff would not execute a release prepared by the Etowah County District Attorney's Office, cannot result in the liability of Gadsden, as the assistant district attorney is an employee of the Etowah County District Attorney's Office. Also see, infra, at p. 16.[7] The plaintiff's claim, insofar as it is related to the actions of the officers, requires proof not only that the officers had the exculpatory evidence, but that the officers should have provided the district attorney with the exculpatory evidence. The difficulty in making this claim is that, allegedly, the district attorney generally receives a copy of the Certificate of Analysis directly from the forensic lab. The plaintiff will either have to prove this fact false; prove that, regardless of whether a copy of the certificate is sent to the district attorney, the police are, in practice, required to provide the district attorney with all evidence that it has pertaining to a case; or demonstrate that the police had insufficient reason to believe that the assistant district attorney had actually received the Certificate of Analysis in this case. However, there is no indication from the Certificate of Analysis that it was sent to the District Attorney of Etowah County's Office. This is sufficient to create a genuine issue of material fact on the question of whether the officer defendants had a sufficient reason to believe that a copy of the Certificate of Analysis was delivered to the assistant district attorney. It may be arguable that the claims may be maintained against the City for false imprisonment. The court reserves judgment. Compare City of Birmingham v. Thompson, 404 So.2d 589 (Ala. 1981).[8]

**B. Malicious prosecution.**

The court notes, as an initial matter, that Gadsden is clearly immune from the plaintiff's malicious prosecution claim. See Franklin v. City of Huntsville, 670 So.2d at 852. This claim against Gadsden will, therefore, be dismissed.

Under Alabama law, "malicious prosecution actions are not favored." Skinner v. Etheridge, 564 So.2d 902, 903 (Ala. 1990). "In order to prevail in an action for malicious prosecution, the complainant

---

[7] It is irrelevant that the benefit of the release would accrue to the police officers if those officers had no hand in the concoction of the release.

[8] A claim against the municipality will only lie if there is negligence, but not greater culpability, and a claim against the officer defendants will only exist if their failure to attend to and report the Certificate of Analysis rose to a level sufficient to defeat discretionary function immunity.

must prove each of the following elements of that cause of action: (1) a judicial proceeding initiated by the defendant, (2) a lack of probable cause, (3) malice, (4) termination of the judicial proceeding favorably to the plaintiff, and (5) damages." Escoffier v. Anderson, 557 So.2d 844, 845 (Ala. 1990). It has long been the case that, under Alabama law, an action for malicious prosecution "may lie, not only for the commencement of the original proceeding, but for its continuance as well." Laney v. Gliden Co., Inc., 194 So. 849, 851, 239 Ala. 396 (Ala. 1940). The court can make no plausible distinction between the false imprisonment claim and the malicious prosecution claim insofar as they both relate to the failure of the officers to contact the district attorney about the report. As a practical matter, one of the two claims subsumes the other, in any event.

II. SECTION 1983 CLAIMS.

The plaintiff apparently makes four claims: First, the plaintiff contends that the defendants are liable for violating his due process rights because, under Brady v. Maryland, 373 U.S. 220 (1963), the defendant police officers failed in their obligation to provide him with all exculpatory evidence in their possession. Second, the plaintiff claims that, by holding him in jail after discovering that he did not possess crack cocaine, the defendant police officers violated his due process right to be released when his innocence is ascertained. Third, the plaintiff complains that he was subjected to a false arrest by defendant Dale when Dale obtained the warrant against the plaintiff without probable cause. Finally, the plaintiff asserts that Gadsden is liable for his continued detention based upon his refusal to sign a release of liability. The defendants, of course, contest all of these claims on the grounds that the officers are protected by qualified immunity, that the municipality cannot be held liable for the officers' acts based upon respondeat superior and that the plaintiff cannot make out a claim of a consitutional violation in any case.

### A. Brady v. Maryland claim.

The plaintiff claims that under Brady v. Maryland, 373 U.S. 220 (1963), the police officers were required to turn any evidence over to him (even via the prosecutor's office) and their failure to do so should subject the defendants to liability. In Flores v. Satz, 137 F.3d 1275, 1278 (11th Cir. 1998), the Eleventh Circuit Court of Appeals held that, even if the defendant had a duty to turn over exculpatory evidence to defendant, no liability against the defendant existed where the plaintiff was released prior to trial:

> [D]espite Plaintiff's claims, he has not shown that Defendants violated a clearly established right under Brady. "Brady protects an accused's due process right to a fair trial." McMillian, 88 F.3d at 1567. And, due process is violated when a defendant is convicted in a trial in which the prosecution

*12*

failed to disclose to the defense exculpatory or impeachment evidence that undermines confidence in the outcome of the trial. See Brady, 373 U.S. at 87; 83 S. Ct. at 1196-97; United States v. Newton, 44 F.3d 913, 918 (11th Cir. 1994) ("The Brady rule protects a defendant from erroneous conviction. . . ."); see also United States v. Bailey, 123 F.3d 1381, 1398 (11th Cir. 1997) (no Brady violation because no exculpatory evidence that would "have affected [defendant's] conviction"). Plaintiff, however, was never convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of Brady. See United States v. McKinney, 758 F.2d 1036, 1049 (5th Cir. 1985) (the court cannot reverse a conviction under Brady "unless a fundamentally unfair trial resulted"); see also United States v. O'Keefe, 128 F.3d 885, 898 (5th Cir. 1997) (So long as the evidence is disclosed "at trial in time for it to be put to effective use, a new trial will not be granted 'simply because [the Brady evidence] was not disclosed as early as it might have and, indeed, should have been.'" (quoting McKinney, 758 F.2d at 1050)).

Id. at 1278-79. Summary judgment will be GRANTED on the plaintiff's Brady claim.

## B. Illegal detention.

In addressing an officer's claim of qualified immunity, the court is to engage in a three part inquiry: First, the court must develop the facts in the light most favorable to the plaintiff, both with regard to objective facts and subjective mental states, where relevant to the offense. Crawford-El v. Britton, — U.S. —, 118 S.Ct. 1584, 1597 (1998). Next, the court must resolve whether the conduct of the defendant officer constituted a violation of the plaintiff's constitutional rights under presently existing constitutional law. County of Sacramento v. Lewis, — U.S. —, — S. Ct. —, 1998 WL 259980, *4 n.5 (May 26, 1998); Siegert v. Gilley, 500 U.S. 226, 232 (1991).[9] Only after this may the court examine the issue of whether the rights in question were clearly established at the time of the violation and whether a reasonable official would have been aware of a violation of that right given the then-known facts. County of Sacramento v. Lewis, 1998 WL 259980 at *4 n.5.

---

[9] In Lewis, the Supreme Court clarified the rationale behind resolving the substantive issues in a qualified immunity case before addressing the question of whether the law was clearly established at the time of the violation:

> . . . [T]he generally sound rule of avoiding determination of constitutional issues does not readily fit the situation presented here; when liability is claimed on the basis of a constitutional violation, even a finding of qualified immunity requires some determination about the state of constitutional law at the the time the officer acted. What is more significant is that <u>if the policy of avoidance were always followed in favor of ruling on qualified immunity whenever there was no clearly settled constitutional rule of primary conduct, standards of official conduct would tend to remain uncertain, to the detriment of both officials and individuals.</u> An immunity determination, with nothing more, provides no clear standard, constitutional or non-constitutional.

City of Sacramento v. Lewis, 1998 WL 259980 at *4 n.5 (emphasis added). The court is, therefore, "to determine the right before determining whether it was previously established with clarity," with the purpose of establishing clear legal standards for all future cases and conduct, to the benefit of officers, where the resolution of the constitutional issue may be in their favor, and individuals, whether qualified immunity is ultimately granted or not, where the resolution of the constitutional right is in favor of the plaintiff. Id. at *4 n.5.

The illegal detention claim in the present case is the other side of the <u>Brady</u> violation coin. Instead of arguing that plaintiff was denied a fair trial by the withholding of exculpatory evidence, as is requisite under circuit law for the assertion of a <u>Brady</u> argument, the plaintiff instead argues that he was impermissibly detained when evidence which would necessarily have led to his release was withheld. The defendants point to <u>Kelly v. Curtis</u>, 21 F.3d 1544 (11th Cir. 1994). In <u>Kelly</u>, the plaintiff claimed that he was held in jail awaiting trial on drug charges that were eventually dropped. For a substantial portion of this time, the police were in possession of a report indicating that the substance that the plaintiff allegedly possessed was not a controlled substance. The Eleventh Circuit Court of Appeals determined that the officer possessing the report had no duty to bring the report to the attention of the prosecutor or state court.

> Although Gibson did receive the exculpatory report, she did not, on the facts of this case, have a clearly established duty to bring that report to the attention of the prosecutor or the state court. In holding that Gibson had such a duty, the district court relied in large part on <u>Sanders v. English</u>, 950 F.2d 1152, 1163-64 (5th Cir.1992). <u>English</u> was decided by another circuit more than two years after Kelly's incarceration, and does not purport to decide what rights were clearly established prior to its date of publication; therefore, it does not support Kelly's position on the qualified immunity issue. Even if <u>English</u> had been decided by this Court and before Kelly's arrest, it involved facts materially dissimilar from those of the present situation. There, a police officer withheld exculpatory information that a reasonable officer would not have expected the district attorney to get from another source. <u>See id.</u> at 1156-58, 1162. Here, by contrast, Gibson had every reason to think that the district attorney's office already knew about the exculpatory report. The report itself listed the district attorney's office as a recipient. Moreover, the state lab had a general practice of sending a copy of its results directly to the prosecutor. <u>English</u> simply does not deal with a situation in which an officer fails to turn over to the prosecutor evidence she has reason to believe that the prosecutor already has.
>
> * * *
>
> What is missing from Kelly's attempt to pierce Gibson's qualified immunity defense is a decision clearly establishing a federal statutory or constitutional duty on the part of a law enforcement officer to inform the prosecutor's office of exculpatory evidence that the officer has reason to believe is already known to that office. No such duty can be drawn from the case law in existence at the time of these events, nor can it even be drawn from case law in existence now.
>
> The same is true of any failure of an officer to inform defense counsel or the court of exculpatory evidence: <u>the officer has no such duty where she has reason to believe that the prosecutor is aware of that evidence</u>. The Constitution places the duty to disclose known exculpatory evidence upon prosecutors. E.g., <u>Brady v. Maryland</u>, 373 U.S. 83, 86-88 [] (1963). It imposes no obligation upon law enforcement officers to second guess prosecutors about whether evidence known to them is exculpatory. The district court should have granted summary judgment to detective Gibson on qualified immunity grounds insofar as the illegal detention claim is concerned.[10]

<u>Kelly v. Curtis</u>, 21 F.3d at 1552.

---

[10] The defendants do not assert that the Certificate of Analysis was not whole exculpatory and did not negate every inference of a crime, so the court omits the portions of <u>Kelly</u> that deal with that aspect of the plaintiff's claim.

As the Eleventh Circuit Court of Appeals noted in <u>McMillian v. Johnson</u>, 88 F.3d at 1567, "[i]nvestigators satisfy their obligations under <u>Brady</u> when they turn exculpatory and impeachment evidence over to the prosecutor." In the instant case, the officer defendants, although they allegedly expected copies of the Certificate of Analysis to be sent to the district attorney's office, did not have anything more than that expectation to conclude that the Certificate had been sent. Unlike in <u>Kelly</u>, there is no indication on the Certificate possessed by police that a copy was actually sent to the district attorney's office, or anywhere but to Hoskins. There exists a question of fact as to whether the mere expectation that a copy of the report would be sent to the district attorney's office without more was a sufficient reason for Hoskins and Dale not to have turned over the report to the prosecutor's office or called it to its attention, particularly if there is a practice in place that the police are to maintain evidence for the prosecutor in preparation of trial, as plaintiff alleges. The law, in this respect, was clearly defined on the dates involved in the present action. Qualified immunity will be denied.

## C. False Arrest.

Where the plaintiff is arrested without a warrant, to make out a false arrest claim under the Fourth Amendment, the plaintiff must demonstrate that the officer had probable cause for the arrest. In <u>Williamson v. Mills</u>, 65 F.3d 155, 158 (11th Cir. 1995), the Eleventh Circuit Court of Appeals stated:

> The Fourth Amendment permits warrantless arrests if made with probable cause. <u>E.g.</u>, <u>United States v. Espinosa-Guerra</u>, 805 F.2d 1502, 1506 (11th Cir. 1986). "A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." <u>Von Stein v. Brescher</u>, 904 F.2d 572, 578 (11th Cir. 1990). Critical to probable cause is some information identifying the subject of the arrest as the perpetrator of the suspected criminal conduct. <u>See, e.g.</u>, <u>Wong Sun v. United States</u>, 371 U.S. 471, 480-482 [] (1963).

The plaintiff here cannot make out a false arrest claim against Dale. When the warrant was sworn out against Covington, there was no indication that the substance obtained from his pockets was anything but crack cocaine. Further, the arresting officers found the plaintiff to have been resistant to the arrest and to have been acting as someone who was in possession of drugs would. Finally, they had the words of their informant, whose information about Covington's presence in the white Nissan with a substance which was apparently crack cocaine was evidently borne out when the police arrived. <u>Cf</u>. <u>Alabama v. White</u>, 496 U.S. 325 (1990). Dale, at a minimum, is entitled to qualified immunity.

**D. Municipal liability of Policy of the District Attorney's Office.**

The liability of a municipality for its officers under § 1983 is not based upon respondeat superior. For a municipality to be held liable for the acts of its officers, the acts of the officers must have been taken pursuant to a custom, policy or practice of the municipality. The plaintiff premises his illegal detention claim against Gadsden not on the acts of the defendant officers, but on the policy of the Etowah County District Attorney's Office to condition release from jail on release from liability. Perhaps, if the policies of the District Attorney's Office were attributable to Gadsden, the City might be liable. However, the District Attorney's Office is an arm of the Judicial District of Etowah County in pursuing prosecutorial functions. Gadsden cannot be held liable for policies of a county policymaker where state law makes those acts of the policymaking body attributable to the county. McMillian v. Monroe County, Alabama, — U.S. —, 117 S.Ct. 1734, 1737 (1997).

CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment will be GRANTED in part and DENIED in part.

This 15 day of July 1998.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE